RENDERED: FEBRUARY 20, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

### NO. 2025-CA-0688-MR

KENTUCKY PUBLIC PENSIONS
AUTHORITY; BOARD OF
TRUSTEES OF THE KENTUCKY
RETIREMENT SYSTEMS; AND
KENTUCKY EMPLOYEES
RETIREMENT SYSTEM                                         APPELLANTS


|  | APPEAL FROM FRANKLIN CIRCUIT COURT |
|---|---|
| v. | HONORABLE PHILLIP J. SHEPHERD, JUDGE |
|  | ACTION NO. 23-CI-01051 |


GREEN RIVER REGIONAL MENTAL
HEALTH MENTAL RETARDATION
BOARD, INC. D/B/A RIVERVALLEY
BEHAVIORAL HEALTH                                          APPELLEE


OPINION
VACATING AND
REMANDING

** ** ** ** **

BEFORE: CETRULO, COMBS, AND TAYLOR, JUDGES.

COMBS, JUDGE: This is a declaratory judgment action. The Appellants are: the

Kentucky Public Pensions Authority ("public pensions authority"); the Kentucky

Employees Retirement System ("KERS"); and the Board of Trustees of the Kentucky Retirement Systems. They appeal from a summary judgment of the Franklin Circuit Court granted in favor of Green River Regional Mental Health Mental Retardation Board, Inc., d/b/a RiverValley Behavioral Health ("RiverValley").

The Franklin Circuit Court determined that the public pensions authority was equitably estopped from implementing administrative regulations promulgated pursuant to the provisions of KRS[1] 61.5991 pertaining to its duty to audit quasi-governmental employers who participate in KERS and receive a government-funded subsidy for their contribution to employees' pension benefits. The court concluded that RiverValley was entitled to judgment as a matter of law. After our review, we vacate and remand for additional proceedings.

In 1956, the General Assembly established KERS along with a board of trustees to administer it. 956 Ky. Acts ch. 35; *Kentucky Employees Retirement System v. Seven Cntys. Services, Inc.*, 580 S.W.3d 530, 534 (Ky. 2019). KERS began administering retirement savings plans for the employees of the Commonwealth, its departments, agencies, and instrumentalities. *Id.* KERS is now administered by the Board of Trustees of the Kentucky Retirement Systems, a statutorily created agency of the executive branch. *Id.*; KRS 61.645. That

---

[1] Kentucky Revised Statutes.

executive agency promulgates administrative regulations necessary to administer KERS, and the public pensions authority provides the day-to-day administrative support required. 105 KAR[2] 1:001. Pension benefits for the Commonwealth's employees are funded through investment of employee and employer contributions to KERS. Participating employers and employees pay into KERS at a set rate, and upon retirement, KERS pays out each individual employee's defined benefit based upon the number of years served, a "benefit factor," and the employee's final compensation. *See* KRS 61.510 *et seq.*

Employer contributions are based -- in part -- upon the number of individuals providing service to the employer, who are defined as "employees" for purposes of membership in KERS. KRS 61.675. An "employee" is defined as someone engaged in regular full-time work with the employer. KRS 61.510(5). Employers are directed to enroll all "employees" into KERS and to remit required contributions as calculated. KRS 61.675(3); 105 KAR 1:140. Individuals providing service who do not qualify as "employees" -- such as independent contractors or leased employees -- are not required to be enrolled in KERS. KRS 61.510(5); KRS 61.675. Government agencies and quasi-governmental agencies participating in KERS *self-report* their qualifying "employees." And the self-reported information is used to calculate employers' required contributions.

---

[2] Kentucky Administrative Regulations.

-3-

Before enactment of the statute creating the government subsidy at the center of this dispute, KRS 61.5991, government and quasi-governmental employers were not required to report to KERS those individuals providing services whom the employer did not deem to be "employees." However, the public pensions authority was authorized to take corrective action where it discovered that a participating employer had misclassified individuals who should have been enrolled as members of KERS.

KERS is authorized to determine whether a government or quasi-governmental employer is complying with its reporting obligation and to audit those employers in order to detect compliance, fraud, or any changes in circumstances that would affect their obligations. KRS 61.685(1)(a), (b). Upon discovery of any "error" or "omission" in its records, the public pensions authority "shall correct all system records, including but not limited to membership in the system, service credit, member and employer contributions, and benefits paid or payable." KRS 61.685(1).

The public pensions authority performs an "omitted service" determination to decide whether an individual is an "employee" entitled to receive service credits toward pension benefits. KRS 61.552(2); 105 KAR 1:451. Where the public pensions authority determines that an individual is an "employee" who was not properly reported by his employer, all contributions "payable by the

-4-

employer" for the individual's omitted service are deemed "delinquent from the date the employee should have been reported and received service credit[.]" KRS 61.552(2)(f). Once the government or quasi-governmental employer pays the delinquency, the employee may purchase omitted-service credit to secure pension benefits for the relevant period. KRS 61.552(2)(a), KRS 61.552(2)(d)2.; *see also* 105 KAR 1:330.

RiverValley is a quasi-governmental organization established by the General Assembly in 1967 as a regional community services program pursuant to the provisions of KRS 210.370 – 210.450. It offers behavioral health services, substance abuse treatment, and intellectual and disability services to adults and children. It has locations across seven Western Kentucky counties and operates a juvenile-adolescent psychiatric hospital in Daviess County. RiverValley's participation in KERS is based on executive order and an obligation based in statute. *See Kentucky Employees Retirement System v. Seven Cntys. Services, Inc.*, 580 S.W.3d 530, 532–33 (Ky. 2019).

In the 1990's, RiverValley organized several separate but affiliated corporate entities. Two of these corporate entities, Acumen Counseling, Inc., and RiverValley Consulting, supply RiverValley -- on a contract basis -- with healthcare staff (including physicians, APRN's, and therapists) and administrative and executive staff (including its CEO, financial managers, in-house counsel,

-5-

information technology director, and human resources management).  RiverValley determined that these individuals were **not** RiverValley "employees" for purposes of KERS.  Therefore, RiverValley did not report them, enroll them as members of KERS, or remit employer contributions to help fund their pension plans.  Instead, these individuals were offered participation in a 403(b) plan, a federally created tax shelter annuity that allows employees to save for retirement by contributing to individual accounts.  Like a 401(k) plan, participating employers may also contribute to employee accounts.

Since 2015, the General Assembly has allowed quasi-governmental employers to withdraw from participation in KERS upon: (1) approval by the Board of Trustees of the Kentucky Retirement Systems; (2) presentation of a corporate resolution; and (3) payment of the full actuarial costs of pension benefits accrued by current and former employees.  KRS 61.522.  However, in 2019, the General Assembly provided a limited opportunity for participating quasi-governmental employers to withdraw from KERS **without** seeking approval from the Kentucky Retirement Systems Board of Trustees and to pay the costs of its employees' pension benefits over time.  To withdraw, the employer was required, among other things, to remit (either by lump sum or in installments) the full actuarial costs of the benefits that had accrued for current and former employees enrolled in KERS.  The window of opportunity to withdraw from participation

without agency approval was set to expire on June 30, 2021. Employers who wanted to withdraw were required to submit a board resolution by **April 30, 2021**, and to certify that an acceptable alternative retirement plan was being created for employees -- all of whom would be required to relinquish membership in KERS. RiverValley considered withdrawing from KERS, and the public pensions authority provided it with information concerning the costs of doing so.

In March 2021, just before the window to withdraw from KERS without agency approval closed, the General Assembly enacted KRS 61.5991, a statutory scheme designed to encourage increased enrollment in KERS. Government subsidies were to be made available to offset employer contributions remitted by quasi-governmental employers who made efforts to increase or maintain the number of employees reported to the system.

As part of the subsidy scheme, quasi-governmental employers were now required to report individuals providing services who were not enrolled in KERS but who, if employed directly by the agency, would be entitled to membership. KRS 61.5991(1)(a). Using this data, the public pensions authority could calculate an employer's participation rate by dividing the number of "employees" participating in KERS by the employer's entire workforce. The General Assembly authorized subsidies for employers with sixty percent of their

workforce participating in KERS from 2022 – 2024 and eighty percent from 2024 and beyond.  KRS 61.5991(6)(a).

Because tax dollars were at stake, the General Assembly authorized the public pensions authority to review the accuracy of employers' reports. Anticipating that the public pensions authority would identify previously unreported individuals who would always have been treated as "employees" under the new criteria, the General Assembly directed it to "ensur[e] that all eligible employees are being reported and contributions are being paid. . . ."  KRS 61.5991(2)(a)1.–2.

Importantly, however, the original enactment limited the collection of past-due contributions for previously unreported individuals discovered to have been improperly excluded from membership in KERS.  Section (1)(d) provided that "[i]f [the public pensions authority] determines a person who was not reported to the system under this subsection should be reported to the system as a regular full-time employee, [the public pensions authority] shall require the employer covered by this section to report the employee on or after July 1, 2021, *and pay employer contributions prospectively. . . ."*  KRS 61.5991(1)(d), *repealed 2022* (emphasis added).  The General Assembly directed that the public pension authority "shall not, notwithstanding any other statute to the contrary, bill the employer for any

contributions or penalties for any services occurring prior to July 1, 2021, for that specific employee. . . ." KRS 61.5991(1)(d), *repealed* 2022.

The public pensions authority issued bulletins and instructions to quasi-governmental employers describing the subsidy scheme; the auditing process; and Subsection (1)(d)'s cutoff period for unpaid contributions accruing before July 1, 2021. According to RiverValley, it considered its options in light of the government subsidies being offered to offset employer contributions to the pension system and the newly-enacted provisions of KRS 61.5991(1)(d) -- which it construed to be a permanent safe harbor shielding it from "any bills for employer contributions or penalties for any services occurring prior to July 1, 2021." At its April 2021 board meeting, RiverValley's board of directors voted to continue its participation in KERS.

In early 2022, the public pensions authority advised RiverValley and other quasi-governmental employers that pursuant to the requirements of the newly enacted statute, it would review submitted materials to determine whether any individuals now being reported should be reported, going forward, as a regular full-time employee for purposes of KERS. It explained further as follows:

> If it is determined that any person should be reported to the [public pensions authority] as a KERS regular full-time employee, the employer will be required to begin reporting the person as an employee including ensuring the employee contributions are remitted to the [public pensions authority] and pay employer contributions in

accordance with KRS 61.675 effective July 1, 2021 (but not prior to that date).

Critical to this dispute, House Bill 668 was introduced in the 2022 regular session of the General Assembly. The legislation repealed KRS 61.5991(1)(d) in its entirety, eliminating any restriction upon the authority of public pensions to collect employer contributions for improperly classified employees for services performed before July 1, 2021. Under Section 4 of HB 668, the General Assembly clarified that the amendment "shall be retroactive to July 1, 2021." HB 668 also enacted a new provision that required the public pensions authority to audit a percentage of quasi-governmental employers subject to the statute's subsidy reporting requirements "for the purpose of ensuring that all eligible employees are being reported and contributions are being paid in accordance with KRS 61.510 to 61.705." KRS 61.5991(2)(a). This section confirmed that the public pensions authority "shall have full power and authority" to accomplish these audits, "including" its already-existing "authority and power granted under KRS 61.675 and 61.685[.]" *Id.* The new law became effective in April 2022.

RiverValley viewed this change in the legislation as a directive to the public pensions authority "to get busy checking numbers." Weeks later, in May 2022, in an effort to increase the number of "employees" it reported to the public pensions authority (thereby, qualifying for the government subsidy), RiverValley

reported its employee and non-employee information to the public pensions authority. The public pensions authority "got busy checking numbers."

Meanwhile, in response to the drastic dramatic changes to the subsidy scheme, the Board of Trustees of the Kentucky Retirement Systems promulgated an emergency administrative regulation: 105 KAR 1:451E Section 3(3)(c)(2). That regulation provided that where the public pension authority determined that a reported individual was an "employee in a regular full-time position," the quasi-governmental employer "shall be responsible for payment of delinquent omitted employer contributions for all periods of the person's previous employment by the quasi-governmental employer in a regular full-time position." *Id.*

On September 18, 2022, the public pension authority notified RiverValley that all the individuals providing services under contracts with Acumen Counseling, Inc., (268 individuals) and RiverValley Consulting (38 individuals) should be reported as "employees" for purposes of participation in KERS. To assess the retrospective impact of RiverValley's decision never to have reported these individuals as "employees," the public pensions authority directed RiverValley to submit information verifying each individual's past employment information relevant to determining whether the individuals could purchase service credit for past periods of employment with RiverValley. If it were determined that

-11-

they could, then RiverValley would be liable to pay the delinquent omitted employer contributions before these employees could purchase service credit.

RiverValley enrolled the 306 identified individuals as participating members of KERS on September 30, 2022. It provided the requested information concerning past periods of employment by these individuals on November 10, 2022.

Under the statutory scheme, RiverValley received more than $1.6 million in subsidies for fiscal year 2024. However, the public pensions authority has not yet (to-date) conducted a retrospective omitted-service determination with respect to these individuals regarding their employment status or the amount of delinquent omitted employer contributions due for service years before 2022. Consequently, RiverValley has not been assessed any delinquent omitted employer contributions for the 306 individuals. Nevertheless, just days after providing the required information to the public pensions authority for review, RiverValley filed this declaratory judgment action in Franklin Circuit Court against the public pensions authority; the Board of Trustees of the Kentucky Retirement Systems; and KERS.

At issue are the provisions of 105 KAR 1:451E purporting to enable the public pension authority to require payment of delinquent omitted employer contributions from participating quasi-governmental employers pursuant to the

-12-

amended provisions of KRS 61.5991. In its petition, RiverValley alleged that the provisions of that regulation deviated from the statutory provisions and were, consequently, outside the scope of the administrative agency's statutory authority.

RiverValley also alleged that it had been deprived of due process by the public pensions authority and that the provisions of KRS 61.5991 and other provisions relied upon by the public pensions authority violated Sections 2 and 3 of the Kentucky Constitution and the Fifth and Fourteenth Amendments to the United State Constitution. It alleged that the defendants should be equitably estopped from "creating a window of opportunity for RiverValley to exit the pension system and then removing those protections and imposing new liabilities . . . once that window of opportunity had closed." In the alternative, it alleged that the defendants were barred by laches because they failed to take timely action to ensure that the hundreds of individuals identified by the public pensions authority as RiverValley "employees" were included as members of KERS.

RiverValley sought preliminary and permanent injunctive relief and a judgment declaring that with respect to the 306 individuals identified by the public pensions authority, RiverValley could not be made liable for delinquent omitted employer contributions prior to July 1, 2021.

The defendants answered the complaint in January 2024. Four months later, RiverValley filed a motion for summary judgment. It argued, in part,

that equitable estoppel applied to prevent any assessment for delinquent omitted

employer contributions for the following reasons:

> RiverValley was given the opportunity to escape [KERS] by making $38.4 million lump sum payment by June 30, 2021, or $2.2 million annual payments for thirty years. RiverValley had to choose one of those options and submit a board resolution by April 30, 2021, if it wanted to go that way. At that time, the Legislature was holding out the prospect of subsidies and KRS 61.5991(1)(d) promised that participating [quasi-governmental] employers would not be billed "for any contributions or penalties for any services occurring prior to July 1, 2021." RiverValley relied upon that assurance when it let the opportunity to exit [KERS] pass.

KERS, the public pensions authority, and the Board of Trustees of the

Kentucky Retirement Systems responded and filed a cross-motion for summary

judgment. They contended that the circuit court was being asked to rule

preemptively -- and as a matter of law -- that the public pensions authority had no

legal authority to assess delinquent omitted employer contributions for individuals

whom RiverValley was legally required to report as "employees" but had not.

Furthermore, they had not yet assessed, invoiced, or attempted to collect any

delinquent omitted employer contributions from RiverValley. Finally, they argued

that the premature challenge to the public pensions authority's ability to assess

delinquent contributions would ultimately fail on substantive grounds as a matter

of law.

The public pensions authority explained that it had always had express statutory authority to audit employers to determine whether they were accurately reporting "employees" and to assess delinquent omitted employer contributions for persons who were not properly reported and included in KERS. If it were not so, they argued, Kentucky's statutory reporting and contribution requirements would be rendered meaningless. It also rejected RiverValley's claim that the employer had acquired a vested right (through the now repealed provisions of KRS 61.5991(1)(d)) to be free of any such assessments based on the temporary restrictions on efforts to collect delinquent contributions for employees determined to be improperly classified in the administration of KRS 61.5991's subsidy-reporting system. It explained that the provision "was on the books for only a year before being retroactively repealed" by the General Assembly in 2022: "its brief enactment occurred well after RiverValley's conduct that created its liability for delinquent contributions, and it was already repealed when RiverValley reported the individuals at issue and [the public pensions authority] determined them to be employees."

By its order entered on May 2, 2025, the Franklin Circuit Court granted RiverValley's motion for summary judgment. The court concluded that principles of equitable estoppel prevented the public pensions authority from assessing the disputed delinquent omitted employer contributions. It reasoned that

-15-

the General Assembly held out the subsidies to incentivize quasi-governmental employers to increase participation in KERS; that RiverValley's decision not to exit KERS was influenced by provisions of the subsidy statute that prevented the public pensions authority from assessing delinquent contributions beyond July 2021; that the public pensions authority -- thereafter -- represented the statute's provisions to RiverValley; that the amount of RiverValley's anticipated liability is "staggering"; and that the likely assessment imposed by the public pensions authority does not comport with the intent of the General Assembly to increase participation in KERS, breaching the promises relied upon by RiverValley. This appeal followed.

Summary judgment is appropriate where it appears impossible, as a matter of law, for a party to produce evidence at trial warranting judgment in his favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 482 (Ky. 1991); CR[3] 56.03. We review *de novo* the circuit court's decision to grant summary judgment. *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368, 372 (Ky. 2014) (quoting *3D Enters. Contracting Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 445 (Ky. 2005)).

On appeal, the Appellants argue that the circuit court erred by enjoining the public pensions authority from complying with its statutory

---

[3] Kentucky Rules of Civil Procedure.

obligation to collect past-due employer contributions for the hundreds of employees that RiverValley failed to report and enroll in KERS. We agree, and the injunction is hereby dissolved for the reasons that compel us to refrain from adjudicating this controversy at this junction.

The public pensions authority contends that the circuit court erred by concluding that RiverValley presented a justiciable issue justifying the court's immediate intervention. It argues that the administrative process was interrupted by the litigation and that, as a result, the necessary omitted-service determination has not been undertaken; that the amount of RiverValley's liability -- if any -- has not been established; that there has not yet been final agency action; and that no efforts to collect any allegedly delinquent omitted employer contributions have been initiated. It contends that RiverValley cannot identify any harm it will face if judicial review is postponed until the agency has been allowed to complete its work. We are compelled to agree that entry of summary judgment was premature because the dispute is not yet ripe for adjudication.

Kentucky's Declaratory Judgment Act, codified in KRS Chapter 418, is intended to be remedial in nature. *Mammoth Medical, Inc. v. Bunnell*, 265 S.W.3d 205, 209–10 (Ky. 2008). Its purpose is to make courts more responsive and serviceable to citizens by way of settling controversies and affording relief from uncertainty and insecurity with respect to rights and duties. KRS 418.080. In

-17-

light of its purpose, the Act's provisions are interpreted and administered liberally. *Id.*

KRS 418.040 provides that in any action in a court of record wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief, and the court may make a binding judgment. However, the party seeking relief pursuant to the statute must show that an actual, justiciable controversy exists. Proceedings for a declaratory judgment must not merely seek advisory answers to abstract questions. *Mammoth Medical, Inc.*, 265 S.W.3d at 209–10 (Ky. 2008) (citing *Axton v. Goodman,* 205 Ky. 382, 265 S.W. 806 (1924)). Even where a dispute is resolvable by the court's interpretation of a pure question of law, an actual claim must be shown to exist. *Nordike v. Nordike,* 231 S.W.3d 733, 739 (Ky. 2007).

In order to determine whether a justiciable controversy exists, the court must consider "both the appropriateness of the issues for decision and the hardship of denying judicial relief." *Combs v. Matthews*, 364 S.W.2d 647, 648 (Ky. 1963). Even where a justiciable controversy is shown to exist, the court has discretion under the Act's provisions to postpone adjudication. *W.B. v. Commonwealth, Cabinet for Health & Family Serv*., 388 S.W.3d 108, 112 (Ky. 2012) ("KRS 418.065 clearly anticipates that there will be occasions when it will not be best to address the controversy at the time of the petition[.]"). As a matter

-18-

of judicial policy, the court should decline to exercise its jurisdiction where "proper judicial administration requires that action be deferred by the court until the agency has acted and the court may then review its action." *Preston v. Meigs*, 464 S.W.2d 271, 274–75 (Ky. 1971).

Our review is *de novo* when determining whether an "actual controversy" exists. *Bingham Greenebaum Doll, LLP v. Lawrence*, 567 S.W.3d 127, 129 (Ky. 2018). The court's exercise of its discretionary power to assume jurisdiction is reviewed for abuse of discretion. *Gwaltney v Commonwealth Bd. of Soc. Work*, 644 S.W.3d 270, 274 (Ky. App. 2022).

While the court did not ultimately reach the issue, it framed the "primary issue" to be decided as the statutory authority of the administrative agency to promulgate 105 KAR 1:450E. It concluded that the interpretation of KRS 61.5991 (as amended) by the public pensions authority presented a question of law and that the dispute was ripe for adjudication because RiverValley should not have to await "the cataclysmic impact" of a final determination of the public pensions authority. There is no doubt that the ultimate damages could indeed be "staggering" as suggested -- by the trial court. However, no actual figure has been established -- or even suggested -- except by conjecture or speculation.

The public pensions authority determined that RiverValley had improperly excluded 306 individuals from participation in KERS. However, the

existence and amount of RiverValley's liability for the resulting contributions have not been finally determined. No action to collect any delinquent contributions has as yet been undertaken. Moreover, further development of the record is necessary to resolve RiverValley's claims. As the public pensions authority notes, application of equitable estoppel principles asserted by RiverValley requires a balancing of the public interest against the magnitude of RiverValley's "injury." However, as an amount for the delinquent omitted employer contributions has not been determined, this evaluation cannot be undertaken and remains entirely speculative at this point.

Finally, RiverValley cannot show that it is in peril of imminent injury. RiverValley's decision to exclude the individuals from participation in KERS was taken years before the litigation began, and it has already enrolled them going forward. RiverValley's decision-making will not be hampered by postponing an adjudication of the issues. Consequently, we conclude that the circuit court's entry of the summary judgment was premature and that the matter is not properly justiciable at present for lack of necessary ripeness.

To summarize, we dissolve the injunction. We vacate the order of the circuit court granting summary judgment and remand for proceedings in order to complete the administrative process below. This ruling is without prejudice to the rights of either of the parties to pursue legal redress thereafter.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Peter M. Cummins
Louisville, Kentucky

Jason P. Renzelmann
Louisville, Kentucky

J. Austin Hatfield
Louisville, Kentucky

BRIEF FOR APPELLEE:

Stephen R. Price, Sr.
Louisville, Kentucky

Carole D. Christian
Louisville, Kentucky